**Milton S. HANDLOS, Plaintiff,**

v.

**LITTON INDUSTRIES, INC., Defendant.**

**No. 68–C–267.**

United States District Court,
E. D. Wisconsin.

May 7, 1971.

See also D.C., 51 F.R.D. 300.

———◆———

Kersten & McKinnon, by Kenan J. Kersten, Milwaukee, Wis., for plaintiff.

Borgelt, Powell, Petersen & Frauen, by Edmund W. Powell, Milwaukee, Wis., for defendant.

**DECISION and ORDER**

MYRON L. GORDON, District Judge.

The defendant has moved for summary judgment contending that it is not legally responsible for the torts of its wholly-owned subsidiary, Ingalls Shipbuilding Corporation. The nature of the action and various other facets of this action have been considered in four previous written memoranda heretofore filed by this court under dates of September 24, 1969, October 8, 1970, [51 F.R.D. 23] November 2, 1970, and May 5,

---

1971. Accordingly, no recitation of the facts of the case will be made here.

The court's opinion, D.C., 304 F.Supp. 347, dated September 24, 1969 is particularly germane in that it ruled upon a motion to dismiss for want of jurisdiction over the defendant. In denying that motion, I was obliged to examine the relationships between Litton Industries and its subsidiaries; a similar problem is presented by the defendant's present motion for summary judgment.

Each side has filed comprehensive briefs, exhibits and affidavits in connection with the instant motion. The defendant's affidavits are by various individuals who attest to the corporate separateness of Litton Industries, Inc. and Ingalls Shipbuilding Corporation. The movant relies upon Steven v. Roscoe Turner Aeronautical Corporation, 324 F.2d 157 (7th Cir. 1963).

The plaintiff has submitted a wealth of documentary material which very persuasively establishes that Ingalls Shipbuilding was a mere instrumentality of Litton Industries, Inc. Not only did the defendant own all of Ingalls Shipbuilding common stock, but had common officers and directors. In addition to the usual ties between parent and subsidiary, the plaintiff has shown that there are also a great many other enlacements and interweavings between the two companies so as to require the conclusion that in the interests of justice, Litton should be held to answer for the torts of Ingalls Shipbuilding.

As an example of the inter-corporate meshing, one finds that in Litton's 1968 annual report, the defendant differentiated its close relationship with its own subsidiaries in comparison to the ties which bind other companies:

"* * * Litton is thus distinguished from companies with narrowly oriented product lines and also from firms comprised of elements joined only by a financial relationship * * *. One of the numerous examples is Litton's unifying approach to complex marine transportation systems. To plan and build these systems we are using advanced management techniques to wed complimentary Litton capabilities in electronics and automated materials handling with the newest ideas of ship design and construction, as well as whole new concepts of ship production facilities. Our shipyard of the future is itself designed to produce ships for today's needs and to meet the need of the future."

In view of this close relationship between this parent and its subsidiary, there is applicable here the language of Sisco-Hamilton Co. v. Lennon, 240 F.2d 68, 69 (7th Cir. 1957), where the court found a parent company liable in tort and stated:

"The record demonstrates existence of four cognate corporations all geared to the activities of one another under the parent's control. Under this intimate relationship it would be unjust to fall back on sterile technicalities consisting only of identities of entities as the sole bar to recovery for negligence by one or more of the subsidiaries. Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commerce Ass'n, 1918, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Davis v. Alexander, 269 U.S. 114, 46 S.Ct. 34, 70 L.Ed. 186; Garden City Co. v. Burden, 10 Cir., 1951, 186 F.2d 651. The appeal presents a striking illustration of subsidiaries actively implementing each other in rendering services to the plaintiff. This parent corporation cannot sit back on its charter and avoid tort responsibility for its delinquent child."

In my opinion, it would be an affront to the doctrine of respondeat superior and require my ignoring the parent's special control of the subsidiary to grant this motion for summary judgment.

The defendant has also moved for a separate trial on the issue of its liability for the torts of its subsidiary. That motion, too, must be denied.

Now, therefore, it is ordered that the defendant's motion for summary judgment and its motion for a separate trial be and hereby are denied.